## FISHER v. THE STATE OF OHIO.

*Gambling — Schemes of chance — Section 13064, General Code —
Lottery defined — Element of chance exists, when.*

1. To constitute a lottery under Section 13064, General Code, three
   elements must be present. There must be consideration given,
   there must be a prize, and the winning of the prize must be de-
   termined by chance.
2. The element of chance is present in a scheme by which the prize
   is awarded by some action or means taken in which result man's
   choice or will has no part, nor can human reason, foresight,
   sagacity or design enable him to know or determine such result
   until the same has been accomplished.
3. It is not essential, in order that the element of chance may exist
   in a scheme, that the result be determined by the happening of an
   event subsequent to the giving of the consideration. The de-
   termination may be based upon the subsequent ascertainment of
   facts unknown and unknowable at the time of the giving of the
   consideration.
4. Where the rights of a party to receive a prize depend on a series
   of consecutive numbers, and the smaller the number the greater
   the advantage, and the numbering is determined by the exact
   minute the application for membership is signed, and when by
   no human foresight can it be known at the time of the signing
   what the applicant's number will be, the scheme includes the ele-
   ment of chance.

(Decided February 7, 1921.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. H. E. Elliott,* for plaintiff in error.

*Mr. Oscar C. Bell* and *Messrs. Ewing, Ling &
Vickery,* for defendant in error.

SHOHL, P. J. The plaintiff in error, William
Fisher, was arrested and tried in the police court
in the city of Cleveland on a charge of violating the
lottery statute, Section 13064, General Code. From

the sentence based upon the conviction he prosecutes error to this court.

Fisher was the representative of The Co-operative League of America. The league is stated to be a so-called Massachusetts trust, with its home office at Pittsburg, Pennsylvania, but engaged in operations throughout many states of the Union. The vital elements in the business appear to be as follows:

The league solicits memberships through more than one hundred agents in scattered places all over the United States, and persons are invited to become participants in the league and to make the payments called for under the rules. The precise minute at which the signer delivers his application to the agent of the league is marked upon it, and it is then forwarded to the home office. The applications are collected in several series, consisting of $140,000 face value in contracts in each series. It is stated that the object of this is to not allow the series to come below $100,000, and the extra $40,000 is to allow for lapses. As soon as a series is filled up a new series is begun, and it is impossible for the signer of an application, or for the agent at the time of signing, to know into what series any specific application will fall, as that is determined by the number received and the time dating which the application bears. Monthly payments of $10 on each thousand of participation are made by the members. When these are received at the home office, not to exceed $4,500 for each $100,000 is to be taken by the league for expenses, and the balance used as follows:

When a sufficient sum is available in the hands of the trustees for use in a particular series the holder of position number 1 in that series is entitled to borrow $1,000, at 3 per cent. interest, minus such sums as are to his credit by reason of payments already made by him, which are returned to him. The privilege of borrowing a substantial sum at 3 per cent. being obviously valuable, the purchaser has the alternative right to have the league sell his privilege at a premium, which according to the record is stated to prospective purchasers to be sometimes as high as $200. He has certain other options. After the holder of position number 1 has received his loan the remaining funds are used to make a loan to the second number in the series, and so on. The loans are payable at the time the hundredth payment by member number 100 in the series is due. Obviously, then, member number 99 will have paid in his $10 payments for a considerable period of years, without interest, for the right to borrow the sum of $10 for a short time at 3 per cent. The loans are to be secured by mortgage on real estate.

The charge is based solely on the lottery statute, and no charge of fraud is considered by the court.

Does the transaction constitute a lottery within the meaning of the statutes of Ohio?

Generally speaking a lottery is a scheme for the distribution of prizes by lot or chance. It is well established that to constitute a lottery three elements must be present. There must be consideration given, there must be a prize, and the winning of the prize must be determined by chance. See *Eastman* v. *Armstrong-Byrd Music Co.,* 212 Fed. Rep., 662.

There is no substantial dispute of the fact that the applicants in the league gave consideration. That the element of prize is present is clear. Obviously the rights of the holder of position number 1 in a given series are more valuable than those of a person with a larger number. It needs but little argument to show that if a number of persons put their money together in a pool and permit one of them to have the right to borrow it at 3 per cent., when money is worth 6 per cent. or more, the right to borrow it is valuable. The alternative privilege to have it sold at a premium only emphasizes this fact. The person with position number 1 clearly has a desirable number in the series. See *McDonald* v. *United States,* 63 Fed. Rep., 426, 431.

The point primarily relied upon for plaintiff in error is that the element of chance is where numbers are drawn out of a hat, or where position is determined by the spinning of a wheel. If the determination of who shall be the winner of a prize is by mere blind luck, the scheme is surely a lottery. By the best considered authorities it is sufficient that the element of chance is the controlling or predominant feature. *Stevens* v. *Cincinnati Times-Star Co.,* 72 Ohio St., 112, and cases cited in 17 R. C. L., 1224, note 14.

The court in the case of *People* v. *Elliott,* 74 Mich., 264, 267, defined a lottery as:

"A scheme by which a result is reached by some action or means taken, and in which result man's choice or will has no part; nor can human reason, foresight, sagacity, or design enable him to know or determine such result until the same has been accomplished."

This is approved in the case of *Stevens* v. *Times-Star, supra,* at page 147, and also by the upper federal courts. See *Waite* v. *Press Pub. Assn.,* 155 Fed. Rep., 58.

In the case of *State, ex rel. Prout, Atty. Gen.,* v. *Nebraska Home Co.,* 66 Neb., 349, a scheme wherein the rights of the parties "matured" in accordance with their numerical order, determined by the order in which they were received, was held to be a lottery, and a similar scheme was held criminal in the case of *McDonald* v. *United States,* 63 Fed. Rep., 426. See also *Fitzsimmons* v. *United States,* 156 Fed. Rep., 477, and note to same in 13 L. R. A., N. S., 1096, which refers, among other cases, to *State, ex rel.,* v. *Interstate Savings Investment Co.,* 64 Ohio St., 283.

It is attempted to distinguish the foregoing cases, to which numerous others might be added, on the ground that the numerical position of the purchaser of the bond or certificate was determined by the order in which the applications were received at the home office; whereas, in the case at bar the position is fixed by the time at which the application is signed; at the time the parties in the several cases enumerated paid their money into the scheme their position in the series was to be fixed by an event which was to happen in the future, whereas, in the instant case, the rights of the parties are fixed by the time at which they sign. Stress is laid upon the passage in 17 Ruling Case Law, 1223, as follows:

"Chance, as one of the elements of a lottery, has reference to the attempt to attain certain ends, not by skill or any known or fixed rules, but by the hap-

pening of a subsequent event, incapable of ascertainment or accomplishment by means of human foresight or ingenuity."

The quotation is from the case of *Russell* v. *Equitable Loan & Security Co.,* 129 Ga., 154. In the first place it will be noted that that case was affirmed by an equally divided court, three judges having voted to affirm, and three judges having voted to reverse. Moreover, the passage referred to is a mere dictum. The record of the case does not show what the plan of numbering the certificates was. (See bottom of page 163.) The use of the word "subsequent" does not correctly state the law applicable to the facts at bar. Under the circumstances of this case, there is just as great an element of chance, so far as the applicant who proposes to enter the scheme is concerned, whether the time of receipt or the time of signature is taken as the determining factor. If certain parties come together and voluntarily agree upon a sequence in which each shall receive his consideration, there is nothing in the law of lotteries that would prevent it, but under the circumstances here disclosed, and as admitted in the record by the principal operators of the league, a result is reached without regard to any man's choice or will, nor could any applicant by the exercise of any human reason, foresight, sagacity or design know or determine whether his membership would receive a late number in the series or an early number in a subsequent series. The determination based upon the later ascertainment of facts unknown and unknowable at the time of the purchase of the participation is just as much a matter of chance as if it were based upon a subse-

quent spinning of the wheel. (See 1 Williston on Contracts, Section 119, and Holmes on The Common Law, p. 304). If the distinction contended for is valid, one may not have a valid lottery or guessing contest regarding the outcome of an election on the day prior to the election, but if commenced on election day, one minute after the polls were closed and before the ballots were counted, the result would be determined by a past event and would therefore not fall under the ban of the law. The argument contended for would lead to the conclusion that if the wheel had already been spun, two parties to whom the result was unknown could make promises solely dependent upon the number which had come up, and have their contract not regarded as a wager. The distinction is without substance.

An examination of the scheme shows that the benefits contemplated by the prospective member are determined by mere luck, if the scheme is honestly conducted. The scheme shows an attempt to come within the words of the older decisions, but to retain the substance of wager or lottery. One of the primary inducements to participate in it is the prospect of gain to a member by chance.

Suppose that instead of the holder of position number 1 being entitled to borrow $1000, he should be entitled to the entire $100,000, merely because when all the applications were received his came in bearing a later date than the one which was number 100 in a previous series. If that is held not to be a lottery the courts will have found a new scheme to give those who desire to gamble all the benefits of the old method.

The facts shown in the record establish that the business of the league includes all the elements of lottery.

*Judgment affirmed.*

HAMILTON and CUSHING, JJ., concur.

Judges of the First Appellate District, sitting in place of Judges DUNLAP, WASHBURN and VICKERY of the Eighth Appellate District.